UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:14-cr-00237-JMS-KMB |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| ARMAND FULLER | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | 1:14-cr-00237-JMS-KMB |
| | ) | |
| ARMAND RAY FULLER, | ) | -01 |
| | ) | |
| *Defendant.* | ) | |

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

Defendant Armand Fuller (01) has filed a Motion for Compassionate Release, [Filing No. 255], which is ripe for the Court's review.

**I.**
**BACKGROUND**

On November 20, 2014, Mr. Fuller was charged by Information with four counts of Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951, and one count of Using, Carrying, or Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c). [Filing No. 60.] The offense conduct was described as follows:

> Beginning on November 25, 2013, and continuing through the third week in February 2014, there were a series of armed robberies of commercial establishments in the Indianapolis, Indiana area. Those armed robberies included Speedway gas stations, McDonald's restaurants, a Jack in the Box restaurant, a Little Caesar's Pizza parlor, a Steak 'N Shake restaurant, and a Starbucks coffee house, among others. Based on surveillance footage from security cameras at the various businesses, the Federal Bureau of Investigation ("FBI") and Indianapolis Metropolitan Police ("IMPD") were able to link common elements among all the robberies, including distinctive clothing worn by the perpetrators and distinctive firearms used during the heists. The FBI and IMPD were ultimately able to identify the perpetrators of the various robberies as Fuller, Darian Terrell Dowdell…, and Fletcher Andrew Greer…. More specifically:

> On or about January 17, 2014, Fuller, Dowdell, and Greer robbed the Starbucks coffee house located at 1420 North Capitol Avenue, Indianapolis, Indiana. During the course of that robbery, Fuller, Dowdell, and Greer entered the Starbucks during business hours and stole U.S. currency and property belonging to the business and customers who were present at the time. Fuller, Dowdell, and Greer obtained the money and property by means of actual and threatened force, namely by brandishing one or more firearms and demanding cash and property from employees and customers of the business.
>
> On or about January 27, 2014, Fuller, Dowdell, and Greer robbed the McDonald's restaurant located at 2830 Madison Avenue, Indianapolis, Indiana. During the course of that robbery, Fuller, Dowdell, and Greer entered the McDonald's during business hours and stole U.S. currency belonging to the business. Fuller, Dowdell, and Greer obtained the money from the business by means of actual and threatened force, namely by brandishing one or more firearms and demanding cash from employees of the business.
>
> On or about February 5, 2014, Fuller, Dowdell, and Greer robbed the Little Caesar's Pizza located at 4851 North College Avenue, Indianapolis, Indiana. During the course of that robbery, Fuller, Dowdell, and Greer entered the Little Caesar's during business hours and stole U.S. currency and property belonging to the business and its employees. Fuller, Dowdell, and Greer obtained the money and property from the business by means of actual and threatened force, namely by brandishing one or more firearms and demanding cash and property from employees of the business.
>
> On or about February 18, 2014, Fuller, Dowdell, and Greer robbed the Steak ['N] Shake restaurant located at 21 Maplehurst Drive, Brownsburg, Indiana. During the course of that robbery, Fuller, Dowdell, and Greer entered the Steak 'N Shake during business hours and stole U.S. currency belonging to the business. Fuller, Dowdell, and Greer obtained the money from the business by means of actual and threatened force, namely by brandishing one or more firearms and demanding money from employees of the business.

[Filing No. 143 at 1-2.]

During the Little Caesars Pizza robbery on February 5, 2014, the counter clerk and on-site manager advised police that the three robbers were armed and wore masks, jumped the counter and held a gun to the counter clerk's head, and demanded that she relinquish her personal cell phone. [Filing No. 136 at 4-5.] The robbers also ordered the manager to open the safe and took cash from the safe and the register drawer before exiting. [Filing No. 136 at 5.]

After the February 18, 2014 Steak 'N Shake robbery, police attempted to apprehend the suspects as they ran from the restaurant to their vehicle but they were able to enter their vehicle and flee. [Filing No. 136 at 5.] A high-speed chase followed, the suspects' vehicle eventually crashed, and the suspects fled the scene on foot but were ultimately captured. [Filing No. 136 at 5-6.] Two ski masks, two sets of gloves, a loaded pistol, and money taken from the Steak 'N Shake were found inside the vehicle. [Filing No. 136 at 6.]

On June 30, 2015, Mr. Fuller pled guilty to all five counts and was sentenced to 300 months' imprisonment and five years of supervised release. [Filing No. 146; Filing No. 147.] Mr. Fuller has filed a Motion for Compassionate Release *pro se*. [Filing No. 255.] He argues that he establishes extraordinary and compelling reasons for compassionate release because: (1) of his youth at the time of the offenses; (2) he received a disproportionate sentence when compared to his co-defendants and has no criminal history; (3) he has engaged in rehabilitation efforts, made positive contributions to the community, and has a strong reentry plan; (4) he suffered from mental health issues at the time of his arrest; (5) he suffers from a serious medical condition; and (6) his original sentence included upward variances and a firearm enhancement and was excessive. [Filing No. 255 at 4-14.] He also argues that the factors set forth in 18 U.S.C. § 3553(a) warrant release. [Filing No. 255 at 14-19.] The Government has responded to Mr. Fuller's Motion, [Filing No. 261], and Mr. Fuller has filed a reply, [Filing No. 262]. Mr. Fuller's Motion for Compassionate Release is ripe for the Court's review.

## II.
### Discussion

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are

4

applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction.  18 U.S.C. § 3582(c)(1)(A)(i).

The Sentencing Commission has set forth the following considerations when evaluating a request for compassionate release:  First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement"; and second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(a)(1)(A) and (a)(2).  If a court finds that extraordinary and compelling reasons exist and that the defendant is not a danger to the safety of any other person or to the community, it goes on to consider the sentencing factors in 18 U.S.C. § 3553(a), "to the extent that they are applicable."  U.S.S.G. § 1B1.13(a).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute.  *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).  The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction," *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).  On this point, the United States Sentencing Commission amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13 (Nov. 2023).

A. **Extraordinary and Compelling Reasons**

1. *Youth at Time of Offenses*

First, Mr. Fuller argues that he was only 20 years old when he committed the offenses underlying this case and that his young age affected his "impulse control, risk assessment, and

5

decision-making." [Filing No. 255 at 4 (emphasis omitted); *see also* Filing No. 262 at 9.] Many defendants commit serious crimes at young ages and face lengthy sentences. Mr. Fuller's youth when he committed the offenses is not an extraordinary and compelling reason warranting release under § 3582(c)(1)(A), whether considered alone or in combination with any other reason. *See United States v. Taylor*, 2021 WL 3164528, at *3 (S.D. Ind. July 27, 2021).

2. *Disproportionate Sentence and Lack of Criminal History*

Second, Mr. Fuller argues that "[s]ome co-defendants with prior criminal histories received sentences approximately 10 years less [than his sentence], illustrating a significant sentencing imbalance." [Filing No. 255 at 5 (emphasis omitted).] He also notes that he did not have any prior convictions and contends that "[p]ost-First Step Act and current 7th Circuit practices show that similar Hobbs Act defendants with firearms often receive significantly shorter sentences, particularly with concurrent terms." [Filing No. 255 at 5 (emphasis omitted); *see also* Filing No. 255 at 8-9.] In his reply, Mr. Fuller acknowledges a prior shoplifting offense but argues that he was not a "repeat offender." [Filing No. 262 at 9.]

One of Mr. Fuller's co-defendants (Darian Dowdell) was also sentenced to 300 months' imprisonment, and the other (Fletcher Greer) was sentenced to 180 months' imprisonment. [Filing No. 130; Filing No. 149.] Neither of Mr. Fuller's co-defendants had criminal histories that resulted in criminal history points as part of their offense level computation. [*See* Filing No. 107; Filing No. 133.] Conversely, Mr. Fuller did have a criminal history – a prior theft conviction that resulted in a criminal history score of one. [Filing No. 136 at 12.] Mr. Greer also pled guilty several months before his co-defendants. And most significantly, Mr. Fuller agreed in his Plea Agreement to a sentence of 300 months' imprisonment. [Filing No. 115 at 2-3.] This agreement was in exchange for the Government not charging him with three additional § 924(c) violations, which

6

would have resulted in a substantially higher sentence than the one he received. Mr. Fuller's sentence was not disproportionate in relation to his co-defendants and was the sentence Mr. Fuller agreed to in any event. Mr. Fuller's sentence when compared with that of his co-defendants and his criminal history do not provide an extraordinary and compelling reason for compassionate release, whether considered alone or in combination with any other reason.

3. *Rehabilitation, Contributions to the Community, and Reentry Plan*

Mr. Fuller argues that he has founded a community organization "which provides support for children struggling with mental health issues through yoga, dance, art, music, podcasts and more," has completed various educational programs while incarcerated, and has exhibited good behavior during his incarceration. [Filing No. 255 at 6-7; *see also* Filing No. 262 at 10-13.] He asserts that his sentence "underestimated his potential for reform and societal contribution, supporting the argument that continued incarceration is no longer necessary to satisfy the purposes of sentencing." [Filing No. 255 at 6 (emphasis omitted).] Mr. Fuller argues that he has "a comprehensive and stable reentry plan," including residing with his mother and step-father, planning to work with his non-profit organization, and "assist[ing] in family-owned business ventures." [Filing No. 255 at 9 (emphasis omitted).]

Rehabilitation "is not, by itself, an extraordinary and compelling reason" for release, but it "may be considered in combination with other circumstances." U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t). Mr. Fuller's formation of an organization focused on providing support to children struggling with mental health issues is commendable, as is the fact that he has taken advantage of some educational programming while incarcerated. But Mr. Fuller must have other circumstances that combine with his rehabilitation and his family's support upon reentry to establish extraordinary and compelling reasons and, as explained above and below, he does not. Even considering the

7

reasons he has raised, the Court, in its discretion, does not find these circumstances, as required under U.S.S.G. § 1B1.13(b)(5), to be "similar in gravity" to the circumstances listed in subsections (b)(1) through (b)(4), where the defendant is exceptionally sick, elderly, indispensable for family care, or was a victim of abuse while in custody. U.S.S.G. § 1B1.13(b)(1)-(b)(5). Mr. Fuller's rehabilitation and his reentry plan are not extraordinary and compelling reasons for compassionate release, whether considered alone or in combination with any other reason.

As for his behavior while incarcerated, Mr. Fuller has been disciplined numerous times while incarcerated, including for being in an unauthorized area, refusing to obey an order, being absent from assignment, using drugs/alcohol, and twice for possessing a cell phone. [Filing No. 261-1.] In November 2025, the Warden at his facility requested that he be transferred from a low-security facility to a medium-security facility because his possession of a cell phone infractions "demonstrate[d] his ability to bypass security measures at a Low security facility." [Filing No. 261-3.] Mr. Fuller's characterization of his behavior while incarcerated does not match reality. And, in any event, good behavior is expected and cannot be an extraordinary and compelling reason for release, no matter how exceptional. *See* 28 U.S.C. § 994(t); *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) ("We cannot read § 3582(c) to permit good prison conduct…alone to override Congress's determinate sentencing scheme."). Mr. Fuller's efforts at rehabilitation, his reentry plan, and his behavior while incarcerated are not extraordinary and compelling reasons for release, whether considered alone or in combination with any other reason.

    4.  *Mental Health Issues at Time of Arrest*

Mr. Fuller argues that at the time of his arrest, he struggled with depression, anxiety, anger issues, and impulse control disorder and was diagnosed with psychopathy by a Bureau of Prisons ("BOP") psychiatrist. [Filing No. 255 at 7.] He asserts that he has pursued treatment while

8

incarcerated, that continued incarceration exacerbates his conditions, and that release would ensure continuity of care with his doctor. [Filing No. 255 at 7-8; Filing No. 262 at 6-7.]

Mr. Fuller has not provided any records indicating that he has sought or received mental health treatment while incarcerated. As to his mental health at the time of sentencing, the Court granted Mr. Fuller's request for a competency evaluation prior to sentencing and that evaluation reflected that Mr. Fuller was competent to stand trial. [*See* Filing No. 110; Filing No. 136 at 14.] Further, any mental health issues were considered by the Court at sentencing. Mr. Fuller's mental health at the time of his arrest is not an extraordinary and compelling reason for release, whether considered alone or in combination with any other reason.

     5.    *Medical Conditions*

Mr. Fuller argues that he suffers from degenerative eye disease, previously had a cornea transplant, and needs cataract surgery. [Filing No. 255 at 8.] He argues further that when he reviewed medical records provided by the Government with its response to his Motion for Compassionate Release, he learned that he has Stage 2 chronic kidney disease which developed after having Covid-19 in 2020.[1] [Filing No. 262 at 4.] He argues that "[u]ntreated [chronic kidney disease] can progress to end-stage renal disease, increase the likelihood of cardiovascular complications, and cause long-term systemic harm." [Filing No. 262 at 5-6 (emphasis omitted).] Mr. Fuller also argues for the first time in his reply that he "continues to experience post-COVID fatigue, hair loss, and hormonal imbalance, which have impaired his overall health and energy"

---

[1] In his reply, Mr. Fuller argues that the Government improperly filed his medical records not under seal and requests that the Court seal his medical records. [Filing No. 262 at 2-4.] Based on Mr. Fuller's request, the Court **DIRECTS** the **CLERK** to **SEAL** Mr. Fuller's medical records, which are docketed at Filing No. 261-4 and Filing No. 261-5.

and that if these conditions are left untreated they can affect his kidney disease and mental health. [Filing No. 262 at 6 (emphasis omitted).]

U.S.S.G. § 1B1.13(b)(1)(B) and (C) provide that an extraordinary and compelling reason exists where:

> (B) The defendant is--
>
>> (i) suffering from a serious physical or medical condition,
>>
>> (ii) suffering from a serious functional or cognitive impairment, or
>>
>> (iii) experiencing deteriorating physical or mental health because of the aging
>
> process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

As for his eye issues, Mr. Fuller's medical records reflect that he receives regular follow-up to monitor his eyes, that his issues are stable, and that the BOP plans to continue monitoring any issues. [*See, e.g.*, Filing No. 261-4 at 1-4.] Mr. Fuller has not provided any evidence that his eye issues interfere with his ability to care for himself or require care that is not currently being provided.

Mr. Fuller's medical records mention stage 2 chronic kidney disease, but they also reflect that his relevant labs will be monitored and "[o]rders placed for serial labs placed w/ previous encounter." [Filing No. 261-4 at 4.] His records explain that his creatinine was slightly elevated but his GFR was normal, and that the BOP would "[c]ontinue follow up labs." [Filing No. 261-5 at 3.] Like his eye issues, Mr. Fuller's medical records indicate that his chronic kidney disease is being closely monitored and he is undergoing periodic lab tests. They do not indicate that his

10

chronic kidney disease interferes with his ability to care for himself or requires care that is not currently being provided.

Additionally, to the extent that Mr. Fuller argues that he is not receiving adequate medical care, [*see* Filing No. 262 at 3], his conditions of incarceration might form the basis for relief in a civil suit, but such allegations are not grounds for compassionate release under § 3582(c)(1)(A). *United States v. Miller*, 2022 WL 2187555, at *1 (7th Cir. June 16, 2022) ("[T]o the extent that [defendant] challenges the conditions and medical care at [the prison] more generally, a compassionate-release motion is not the right vehicle.") (citation omitted).

Mr. Fuller's health conditions do not warrant compassionate release, whether considered alone or in combination with any other reason.

      6.      *Unusually Long Sentence and Firearm Enhancement*

Finally, Mr. Fuller argues that his original sentence included an upward variance and included an "excessive" firearm enhancement. [Filing No. 255 at 10-11; *see also* Filing No. 262 at 7-9.] U.S.S.G. § 1B1.13(b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individual circumstances.

Putting aside the issue of whether the Sentencing Commission exceeded its authority in promulgating § 1B1.13(b)(6), the Court finds that Mr. Fuller has not shown that he meets the requirements of this subsection in any event because he has not shown that a specific change in the law results in a "gross disparity" between the sentence he received and the sentence he would receive today. Mr. Fuller appears to rely on Amendment 814, which he argues "explicitly

11

recognizes post-sentencing developments, youth, and rehabilitation as extraordinary and compelling reasons supporting compassionate release." [Filing No. 262 at 9.]  But the Court has already considered the "post-sentencing developments" Mr. Fuller points to, including his rehabilitation, along with his youth and other factors and has found that they do not constitute extraordinary and compelling reasons warranting compassionate release, whether considered alone or in combination with any other reason.

To the extent Mr. Fuller is generally arguing that his sentence is unusually long, the Court has already noted that his sentence resulted from a negotiated plea agreement in which he pled guilty to four Hobbs Act robberies and one § 924(c) violation to avoid the Government's pursuit of additional charges – including three more § 924(c) violations and potentially additional Hobbs Act robbery charges.  A conviction on all potential § 924(c) charges alone would have resulted in a mandatory minimum sentence exceeding 100 years under pre-First Step Act sentencing guidelines, which provided for 25-year minimum mandatory sentences on each subsequent § 924(c) count.  As discussed above, the Government's decision to forego these additional charges significantly reduced his mandatory sentence, and Mr. Fuller explicitly agreed to the 300-month term in exchange for these concessions.  Mr. Fuller's motion disregards this agreement and the substantial benefit he received.

Finally, under the current sentencing scheme post-First Step Act, Mr. Fuller could still face a mandatory minimum of 28 years for four separate § 924(c) violations alone, consecutive to the sentence for the Hobbs Act robberies.  The Court finds that Mr. Fuller's sentence is still reasonable, prudent, and consistent with the statutory sentencing framework, and is not unusually long.  The length of Mr. Fuller's sentence is not an extraordinary and compelling reason for compassionate release, whether considered alone or in combination with any other reason.

### B.  Danger to the Safety of Any Other Person or to the Community

Even if the Court found that extraordinary and compelling reasons exist that support compassionate release, it also finds that Mr. Fuller is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Mr. Fuller and his co-defendants participated in numerous armed robberies of businesses over the course of several months, while customers were present at the businesses. During the robberies, Mr. Fuller and his co-defendants brandished firearms and during at least one of the robberies, they held a firearm to an employee's head. When police identified and began pursuing Mr. Fuller and his co-defendants, they led police on a high-speed chase and fled on foot after their vehicle crashed. These circumstances indicate that Mr. Fuller is a danger to the safety of any other person or to the community. Mr. Fuller's assurances that he has changed, been rehabilitated, and has a stable reentry plan do not alleviate the Court's concerns. Perhaps the Court might rule otherwise had BOP records not indicated that Mr. Fuller has been disciplined numerous times while incarcerated – for being in an unauthorized area, refusing to obey an order, being absent from assignment, using drugs/alcohol, and twice for possessing a cell phone. Moreover, the recent request from Mr. Fuller's warden to increase the severity of his classification is troubling. The disciplinary history further supports the Court's finding that Mr. Fuller is a danger to any other person or the community.

In sum, the Court finds that Mr. Fuller has not presented extraordinary and compelling reasons to release him, whether considered alone or in combination with any other reason. Given this determination, the Court need not address whether the sentencing factors listed in 18 U.S.C. § 3553(a) weigh in favor of his release.

## III.
### CONCLUSION

For the foregoing reasons, the Court:

- **DIRECTS** the **CLERK** to **SEAL** Mr. Fuller's medical records, which are docketed at Filing No. 261-4 and Filing No. 261-5; and

- **DENIES** Mr. Fuller's Motion for Compassionate Release. [255.]


Date: 2/3/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


**Distribution via ECF to all counsel of record**

**Distribution via United States Mail to:**

Armand Fuller
#12251-028
FCI Yazoo City Low II
Federal Correctional Institution
P.O. Box 5000
Yazoo City, MS 39194